NB:BTR
F.#2011R00797
NYNYE562

<u>Submitted Under Seal</u>   **11-0474M**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

MAY 05 2011

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

DERICK PHANORD, also known as
    "D", "DP","Big D"
    and "Double Pounds,"

        Defendant.

- - - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK SS:

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR AN
<u>ARREST WARRANT</u>

M. No. _____
(T. 18, U.S.C., §§ 924(c),
1951 and 1956(h))

        EDWIN HOLMES, being duly sworn, deposes and says that he is a Task Force Officer with the United States Drug Enforcement Administration ("DEA") duly appointed according to law and acting as such.

        On or about and between April 1, 2009 and April 30, 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DERICK PHANORD, also known as "D", "DP", "Big D" and "Double Pounds," together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce and the movement of articles and commodities in commerce, by robbery, to wit: the robbery of occupied residences and businesses in the New York metropolitan area, whose identities are known to your affiant, of controlled

substances, United States currency, jewelry and weapons.

(Title 18, United States Code, Section 1951).

Further, on or about and between April 1, 2009 and April 30, 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DERICK PHANORD, also known as "D", "DP", "Big D" and "Double Pounds," together with others, did knowingly and intentionally use and carry a firearm during and in relation to one or more crimes of violence, to wit: the robberies described below, and did knowingly and intentionally possess said firearm in furtherance of said crimes of violence, which firearm was brandished.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii)).

1.   I am a Task Force Officer assigned to the Long Island District Office of DEA.  I am employed as a Special Investigator with the Nassau County District Attorney's Office, and has been assigned to DEA Task Force as a sworn federal officer for approximately 15 years.  Prior to that, I was an officer with the Nassau County Police Department for 34 years. This complaint is based on information and belief the source of that information and the basis of my belief being personal observations and direct knowledge, discussions with other agents,

and confidential sources:₁

## SUMMARY OF INVESTIGATION

2.  This investigation has established, over an eighteen month period, that the defendant DERICK PHANORD, also known as "D", "DP", "Big D" and "Double Pounds," (hereinafter "PHANORD") together with others, committed numerous home invasion robberies of businesses in the New York metropolitan area.  The defendant targeted individuals who he believed to be business owners in possession of quantities of cash.  DERICK PHANORD and his co-conspirators also targeted known or suspected drug dealers with access to quantities of cash and controlled substances and other valuables.  Brandishing firearms, the defendant and his criminal associates threatened the individuals they found within the residences and businesses that they targeted and stole quantities of controlled substances, cash, jewelry, weapons and other items of value.  The defendant and his associates also sold the illegal drugs they stole to others.

3.  Probable cause to arrest is based, in part, on co-conspirator statements, interviews with the victims and independent analysis and investigation by the police of each

---

1.  As this affidavit is submitted only to establish that probable cause exists to believe that the crimes alleged have been committed by the defendants, all the facts known to me as a result of my investigation has not been included.

robbery.  The co-conspirators include Cooperating Witness No. 1 ("CW-1"), Cooperating Witness No. 2 ("CW-2"), Cooperating Witness No. 3 ("CW-3") and Cooperating Witness No. 4 ("CW-4").  In the fall of 2010, CW-1 and CW-2 separately entered pleas of guilty to conspiracy to commit these Hobbs Act Robberies, three counts of brandishing a weapon during those robberies and conspiracy to launder monies obtained from those crimes, in violation of Title 18, United States Code, Sections 1951, 924(c) and 1956(h), respectively.

4.  CW-1's, CW-2's, CW-3's and CW-4's information has been independently corroborated by the recovery of weapons, police shields used to gain entry into businesses and residences, masks, identified getaway vehicles, proceeds from various robberies, surveillance videos of various robberies, police reports in which the robberies were reported, and debriefings of civilian witnesses.

5.  CW-1, a previously convicted felon, admitted to organizing several robbery groups or "crews," which committed dozens of home invasions, business robberies and related offenses.  One of those crews' centered its activities on Long Island and Queens, New York.  The Long Island crew included the defendant DERICK PHANORD as well as others.

6.  CW-2, a previously convicted felon, admitted to

committing each robbery described below while armed and
brandishing firearms.  CW-2 has described participating in this
rash of armed robberies with the defendant DERICK PHANORD as well
as others.

7.  CW-3 and CW-4 have been arrested on these crimes
and, with counsel present, have admitted participating in the
robberies described below while being armed in most of the
robberies and brandishing firearms.  CW-3 and CW-4 have provided
detailed statements, describing their participation in a series
of armed robberies and attempted armed robberies with the
defendant DERICK PHANORD.

8.  CW-1, CW-2, CW-3 and CW-4, each described in detail
multiple armed robberies, attempted armed robberies and other
offenses committed between April 1, 2009 and April 30, 2010, in
which the defendant DERICK PHANORD participated with them.  On
May 27, 2010, CW-2 positively identified DERICK PHANORD, also
known to CW-2 as "D", "DP" and "DERICK".  On April 8, 2011, CW-3
positively identified DERICK PHANORD also known to CW-3 as
"D","DP" and "DOUBLE POUNDS."  CW-3 has known PHANORD since about
2005 and met him on numerous occasions.  On April 25, 2011, CW-4
identified DERICK PHANORD, known to CW-4 as "D" and "DP."  Each
identified PHANORD as a participant in the crimes listed below.

9.  CW-1, CW-2, CW-3 and CW-4, independently indicated

the defendants planned and participated in the armed robberies of drugs dealers in order to steal drugs and drug proceeds. Businesses or the home of business owners were also targeted if their place of business or home was deemed likely to contain cash.

10. As a regular part of their preparation to commit the armed robberies CW-1, CW-2, CW-3, CW-4 and the defendant PHANORD and others conducted surveillance of the residence or business they planned to rob, as well as of the surrounding area to determine the best time to conduct the robbery. Such planning included the assignment of roles for each individual in the robbery crew. Various members were assigned to act as lookouts and use radio scanners to anticipate any police response. Others took the task of entering the home or business. These crew members would confront, threaten and assault victims, and brandish firearms, in order to convince them to surrender valuables. After each robbery, the participants in the crime would meet at a pre-arranged location. Drugs and stolen cash and other valuables seized would be distributed among the crew. Some drugs would also be set aside to be re-sold. The robberies that CW-1, CW-2, CW-3 and CW-4 committed with the defendant PHANORD, include, but are not limited to, the following:

## 58TH AVENUE, BAYSIDE, QUEENS, NEW YORK (ATTEMPTED ROBBERY)

11.    In or about September, 2009, CW-1 received
detailed information that the occupants of a private residence
located on 58th Avenue, Bayside, New York were involved in the
counterfeit clothing and dry goods business and were normally in
possession of several hundred thousand dollars.   CW-1 conducted
surveillance of the location.   On the evening of September 17,
2009, CW-1 received a telephone call indicating that the
occupants of the targeted residence had approximately $400,000 in
currency on hand and were expecting to receive the delivery of an
additional $400,000 in currency that evening.   CW-1 was told that
the $800,000 in currency was scheduled to be moved from the
targeted residence the following day.   CW-1 immediately
telephoned CW-2 and CW-4, who at the time were in a Social Club
in Brooklyn, New York with DERICK PHANORD, and others.   CW-1,
CW-2, CW-3, CW-4 and PHANORD and another, met CW-1 at a 7-11
convenience store in Queens, New York.   CW-2 and CW-4 informed
CW-1 that PHANORD was "up for the robbery" and wanted to
participate.   CW-2 and CW-4 informed CW-1 that PHANORD had
brought his own firearm with him.    PHANORD proceeded to the
parking lot of the 7-11 convenience store and displayed his own
9mm silver and black semi-automatic pistol.    PHANORD indicated
he transported the gun in a "trap," a hidden storage area,

located in the rear driver's side of PHANORD's late model
burgundy Infinity SUV.  CW-1 then outlined the details of the
planned robbery to CW-2, CW-3, CW-4, PHANORD and another.  CW-2,
CW-3, CW-4, PHANORD and another proceeded in CW-3's black Mazda
to the robbery location.  Upon arriving, the crew initiated
surveillance.  CW-1 informed the agents that each participant in
the robbery crew was armed with firearms at this time.  CW-2, CW-
3, CW-4 and PHANORD, organized themselves as an entry crew, with
a sledge hammer, and police badges and proceeded on foot to the
house.  The remaining robbery crew member stayed behind with CW-
1, in a car to act as lookouts.  CW-2 used the sledge hammer and
attempted to breakdown the front door of the house without
success.  As the robbery crew continued their exertions and noise
to attempt entry, the group became fearful police would be
notified and fled.  All then drove and met on a side street near
Hillside Avenue and the Cross Island Parkway, Queens, New York.
At this time, CW-1 collected from the crew members a green duffle
bag containing the containing the assorted guns, masks, police
badges and assorted hand tools used by the crew in the attempted
break in.  PHANORD choose to keep his 9mm, which was his personal
weapon.

        12.  Investigation by the New York City Police
Department revealed that on September 17, 2009, an attempted

robbery was reported by the occupants of the residence at 58th Avenue, Bayside, Queens, New York.  Subsequent investigation by the New York City Police Department verified that the robbers attempted to force their way into the front door corroborating the details provided by CW's.  Investigators recovered a surveillance video which captured the images of two robbery subjects, including CW-2, attempting to force their way into the residence by the front door.  A video surveillance of the location captured the image of CW-2 attempting to force his way in on September 17, 2009 utilizing a sledge hammer.

**MARISA COURT, BRONX, NEW YORK (ATTEMPTED ROBBERY)**

13.   In or about November 2009, CW-1, CW-2, CW-3 and PHANORD and others attempted to commit the armed home invasion robbery of Marisa Court, Bronx, New York.  CW-1 received prior detailed information from another that targeted the occupants of a private residence located in a gated community on Marisa Court, Bronx, New York.  These individuals were identified to CW-1 as large scale cocaine distributors, who utilized their address as a stash location to hide currency from their illicit narcotic sales.

14.   Prior to the attempted robbery PHANORD and others did surveillance of the targeted residence as well as a barbershop located in the Bronx, New York which is owned by the

targeted victim.  On the evening of the attempted robbery, the participants CW-1, CW-2, CW-3, CW-4 and PHANORD proceeded to the robbery location located on Marisa Court, Bronx, New York. PHANORD drove a burgundy Infinity SUV and parked the vehicle blocks away from the location.  PHANORD subsequently got into the gray 2004 Chevrolet Impala which was occupied by CW-2 and CW-4. PHANORD was armed with his personal 9mm semi-automatic handgun. CW-1 drove a silver Ford pickup truck to the targeted robbery location with CW-3 as a passenger.  CW-2 proceeded on foot to the rear of the targeted residence.  CW-2 climbed up onto the rear portion of the home and observed a male and female occupant inside the residence.  CW-2 returned to the robbery crew and informed them of his/her observations.  Just then a number of marked New York City Police Department cars arrived in the area. As a result of the police presence, the robbery was called off for night.  PHANORD and the remaining members of the robbery crew left the area.

15.  A few days later on November 10, 2009, CW-1, CW-2, CW-3 and CW-4 successfully committed the home invasion robbery at Marisa Court, Bronx, New York.

16.  Investigation by the New York City Police revealed that on November 10, 2009, a home invasion armed robbery was reported by the occupant of Marisa Court, Bronx, New York

residence.  The victim reported a number of unidentified

individuals armed with firearms forced there way into the

residence and took cash and personal property.

<u>163RD STREET AND BOOTH MEMORIAL AVENUE, QUEENS, NEW YORK</u>

17.  CW-1, CW-2, CW-3 and CW-4 were independently

interviewed by investigating agents.  Each of these individuals

admitted to the armed robbery of a private residence in the

vicinity 163rd Street and Booth Memorial Avenue, Flushing,

Queens, New York with PHANORD.

18.  In or about November, 2009, CW-1, CW-2, CW-4 and

DERICK PHANORD were gathered in CW-1's home in Queens, New York.

CW-1 received information regarding another robbery target, a

drug trafficker in Queens, New York.  CW-1 passed on the

information concerning the robbery target to CW-2, CW-3, CW-4 and

DERICK PHANORD.  CW-1 identified the drug trafficker as "Al" and

provided a description of the residence.  CW-1 further provided a

description of the intended victim's vehicle as a Chrysler model

300.  According to CW-3, CW-1 indicated that the victim normally

had quantities of illegal drugs and money at his residence.  The

crew agreed to the robbery and then proceeded to plan it.

19.  CW-3 and CW-1, each separately indicated they

drove to the vicinity of the victims' home in CW-1's tan colored

Cadillac escalade.  CW-3 described how CW-2 and another robbery

participant proceeded to the robbery scene in a gray 2004
Chevrolet Impala.  CW-3 also indicated that the defendant DERICK
PHANORD drove a burgundy colored Infinity SUV to the robbery
location at 163rd Street and Booth Memorial Avenue, Queens, New
York.  According to CW-3, all three described vehicles parked
around the corner of the targeted two story private residence.
The robbery participants, PHANORD, CW-1, CW-2, CW-3 and CW-4 then
met in the vicinity of the victim's residence, they noted the
victim's vehicle was at the location and believed the intended
victim was home at the time.  It was agreed by the participants
to commit the robbery immediately.  According to CW-1, each of
the four robbery participants were armed at the time.  According
to CW-1 he/she provided the firearms for each member of the
robbery crew, except for DERICK PHANORD.  According to CW-1,
DERICK PHANORD brought his own silver and black colored 9MM semi-
automatic pistol.  CW-2 had verified CW-1 supplied firearms.

        20.  CW-3 stated that the robbery crew members
proceeded to the front door and attempted to jimmy the front door
open with a hand tool without success.  DERICK PHANORD, CW-1, CW-
2, CW-3 and CW-4 then together forced the front door open.  All
four made their way to the second floor of the residence.  Upon
entering the second floor back room, CW-3 observed the victim, a
male, white, approximately 30 years of age lay face down on the

floor and voiced his surrender without incident to the robbers.
CW-2 stated that the victim was then bound with plastic zip ties.
CW-1 observed DERICK PHANORD brandishing a 9MM pistol while
acting as a lookout by the staircase.

21.   During the course of this robbery, CW-1, CW-2, CW-
3, CW-4 and DERICK PHANORD conducted a search of the residence.
CW-1, CW-2, CW-3 and CW-4 each stated that $10,000 in currency
was found in an unlocked safe in the second floor bedroom.  A
quantity of cocaine was discovered under the victim's bedroom
mattress.  In addition, CW-1 and CW-3 and CW-4 state that
quantities of hydroponic and regular marijuana were also found
and taken.  CW-2 indicated that a lap top computer was also
stolen.  While searching for and taking these items, CW-1 and CW-
3 overheard the robbery victim begging for the return of a gold
chain and cross which the victim stated was a family heirloom
given to him by his mother.  CW-1 directed the return of the
cross.  According to CW-1, CW-2, CW-3 and CW-4, the robbery crew
then fled the location in their respective vehicles and returned
to CW-1's residence.  CW-2 and CW-3 confirmed that the crew
proceeded to meet in the basement of CW-1's residence in Queens,
New York and divide the proceeds.  CW-3 stated that each robbery
member including DERICK PHANORD, received $2,000 cash and
quantities of marijuana.  CW-1 stated that marijuana taken from

this robbery given to PHANORD was sold from his Suffolk County residence.  CW-1 identified PHANORD as an active retail marijuana distributor who dealt marijuana from his Brentwood, New York residence.

     22.  Also, in or about November of 2009, additional planning and an attempt was made by C-1, C-2, C-4 and PHANORD to kidnap and rob an elderly businessman in Bronx, New York.

     23.  On February 8, 2010, law enforcement officers executed a search warrant at the home of CW-1.  During the search, agents recovered two firearms; a black colored .38 caliber revolver and a black .25 caliber Lorcin semi-automatic pistol.  CW-1 and CW-2 identified the .38 caliber revolver and the .25 caliber Lorcin semi-automatic pistol as firearms available and used in the listed robberies and attempted robberies.  CW-1 informed the agents that DERICK PHANORD always brought his own firearm to the robberies and attempted robberies that PHANORD participated in.  CW-1 and CW-2 both described PHANORD'S firearm as a 9MM semi-automatic pistol color black and silver.

     24.  Law enforcement officers have observed DERICK PHANORD operating a burgundy Infinity SUV.  Law enforcement officers have further identified a 2000 gray/silver Ford pickup truck which was stolen and operated by CW-1 in a number of home

invasions and commercial robberies.  On February 8, 2010, law enforcement officers executed a search warrant at the home of CW-1.  During the search, agents recovered the stolen 2000 Ford pickup truck.  Law enforcement further identified a gray 2004 Chevrolet Impala as being owned and operated by CW-4.  This 2004 Chevrolet has been identified by CW-1, CW-2, CW-3 and CW-4 as being used in a number of armed home invasion and commercial armed robberies.  CW-2 and CW-4 admitted to utilizing the 2004 Chevrolet in theses robberies.

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued so that the defendant may be dealt with according to law.

_Edwin Holmes_

Edwin Holmes
Task Force Officer
Drug Enforcement Administration


Sworn to before me this
the 5th day of May, 2011


THE HONORABLE WILLIAM D. WALL
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK